

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*Joan Mathias*
*Assistant United States Attorney*
*Joan.Mathias@usdoj.gov*

6/30/2020

*Suite 400*           *DIRECT: 410-209-4850*
*36 S. Charles Street*      *MAIN: 410-209-4800*
*Baltimore, MD 21201-3119*   *FAX: 410-962-9293*

June 30, 2020

**VIA E-MAIL**

Michael E. Lawlor, Esquire
John McKenna, Esquire
6305 Ivy Lane, Suite 700
Greenbelt, MD, 20770
Mlawlor@verizon.net

        Re:    *United States v. Jermol McCoy*, Criminal Case Nos. RDB-20-75 and RDB-15-342 (D. Md.)

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Jermol McCoy (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 27, 2020, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.    The Defendant agrees to plead guilty to Count One of the Indictment that has been filed against him, in which he was charged with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court. The Defendant also admits that he is guilty of violating his Supervised Release conditions in Criminal Case No. RDB-15-342 (hereinafter "the VOSR case"), and will enter a plea of guilty in the VOSR case at the same time.

### Elements of the Offense(s)

2.    The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland:

a. An agreement existed between two or more persons to distribute and possess with intent to distribute heroin, a schedule I controlled substance, fentanyl, a schedule II controlled substance, and cocaine base, a schedule II controlled substance; and

b. The Defendant knowingly, willfully and voluntarily became a member in and joined that agreement.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846 | 5 years | 40 years | At least 4 years, maximum 5 years | $5,000,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to

collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have

to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. a. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

  b. This Office and the Defendant further agree that the applicable base offense level is 24 to account for at least 100 grams but less than 400 grams of heroin pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2D1.1(a)(5) and (c)(8).

  c. This Office argues that an enhancement of 2 levels is appropriate because a dangerous weapon was possessed. (U.S.S.G. § 2D1.1(b)(1)).

  d. This Office argues that an enhancement of 2 levels is appropriate because the Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance. (U.S.S.G. § 2D1.1(b)(12)).

4

e. This Office argues that an enhancement of 4 levels is appropriate because the Defendant was an organizer or leader in a criminal activity that involved five or more participants or was otherwise extensive. (U.S.S.G. § 3B1.1(a)).

d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

e. **Thus, the adjusted offense level is between 21 and 29 depending on the resolution of the aforementioned disputed guidelines issues.**

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9. The parties will recommend a sentence consistent with paragraph 10 below. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Rule 11 (c) (1) (C) Plea

10. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **10 years (120 months) of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). The parties agree to recommend that any sentence in the VOSR case (RDB-15-342) be

imposed concurrently to the sentence in Criminal No. RDB-20-75. This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        ii. This Office reserves the right to appeal any sentence below a statutory minimum.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

    d. With respect to Criminal Case Nos. RDB-20-75 and RDB-15-342 (D. Md.), the Defendant further agrees not to file any collateral attacks of any kind against his convictions or his sentences in these cases, including but not limited to, motions or pleadings pursuant to 28 U.S.C. § 2255, 28 U.S.C. § 2241, or 18 U.S.C. § 3582. The Defendant further acknowledges that a breach of this clause of the agreement would leave this Office free to withdraw from this agreement; and the Defendant further agrees that any breach would allow the government to re-bring within six

months following a finding of breach any charges that are not time-barred at the time this agreement is signed.

## Forfeiture

12. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b. Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in items that constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

      i. One 9 mm semi-automatic pistol bearing serial number 30419605; and

      ii. approximately eight rounds of 9 mm ammunition

c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d. The Defendant agrees to assist fully in the forfeiture of the above described property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

13. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will

cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

       b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

14.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

                                  Very truly yours,

                                  Robert K. Hur
                                  United States Attorney

By: *Joan C. Mathias*
        Joan C. Mathias/Michael C. Hanlon
        Assistant United States Attorneys

    I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/23/20
Date

*Jermol McCoy* (signature)
Jermol McCoy

    I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/6/20
Date

Michael E. Lawlor, Esquire

9

# ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

1. The Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), and the Baltimore Police Department ("BPD) conducted an investigation into a drug-trafficking organization, which included Jermol McCoy (the "Defendant"), in Baltimore City, Maryland.

2. This investigation involved court-authorized wiretaps, phone and vehicle tracking warrants, the use of confidential sources, toll analysis, witness interviews, and controlled purchases.

3. From at least 2018 through 2019, the Defendant conspired with others to possess with intent to distribute and distribute at least 100 grams of heroin (a schedule I controlled substance), as well as fentanyl (a schedule II controlled substance) and cocaine base (a schedule II controlled substance) in and around Baltimore City, Maryland.

4. At various times during the conspiracy, the Defendant engaged in phone calls and text message exchanges with members of the conspiracy that were intercepted during the wiretaps. With respect to the Defendant, the wiretap intercepted communications in which the Defendant made plans to distribute drugs, spoke about the hierarchy of the drug trafficking organization, and discussed methods to evade law enforcement detection. The Defendant engaged in those communications in furtherance of, and to advance the purposes of the conspiracy, including the acquisition and distribution of heroin, fentanyl, and cocaine base.

5. On November 21, 2019, law enforcement executed a search warrant at the Defendant's residence, located at 1010 Charing Martin Court, Apartment H, Catonsville, MD. The Defendant maintained this premises for the purpose of manufacturing or distributing a controlled substance. Investigators recovered a knotted plastic bag with suspected heroin behind the microwave, which was lab tested and confirmed to have a net weight of approximately 4.9 grams fentanyl. Investigators also recovered other suspected narcotics that turned out to be cutting agent, including approximately 57.7 grams of quinine. During the same search, officers found drug paraphernalia, including: a kilogram press, a kilogram press handle with attachments, phones, two digital scales, 3 boxes of plastic baggies, mail, and pill containers.

6. Also from the Defendant's residence, investigators recovered one 9 mm semi-automatic pistol bearing serial number 30419605 concealed in a bag in the bedroom. The firearm had one round in the chamber and 7 additional rounds in the magazine, totaling 8 rounds of 9 mm ammunition.

7. Earlier that day, the Defendant was arrested on a state arrest warrant when leaving the 1010 Charing Martin Court location. The Defendant was read his Miranda rights and agreed

to speak with investigators. The Defendant was asked if anything illegal was located in his apartment and he said that he had a pistol and some drugs inside. The Defendant said no one else was inside his apartment. The Defendant said the drugs were heroin and fentanyl.

8. The parties stipulate and agree that the total weight of heroin distributed by the conspiracy and foreseeable to the Defendant is at least 100 grams of heroin. The parties also stipulate and agree that the conspiracy lasted from at least 2018 through 2019.

9. The Defendant agrees that the conspiracy offense set forth herein occurred at a time when the Defendant was on Supervised Release pursuant to Criminal Case No. RDB-15-342 in the United States District Court for the District of Maryland. The conditions of that Supervised Release included that the Defendant would commit no new federal, state, or local crimes. The Defendant agrees that his commission of the conspiracy offense set forth herein constituted a violation of that Supervised Release.

10. All of the events described above took place in the District of Maryland.

SO STIPULATED:

*Joan C. Mathias*

_____
Joan C. Mathias/Michael C. Hanlon
Assistant United States Attorneys


_____
Jermol McCoy
Defendant

_____
Michael E. Lawlor, Esquire
Counsel for Defendant